**JEPSON, INC. and Ko Shin Electric Land Machinery Co., Ltd., Plaintiffs,**

v.

**MAKITA ELECTRIC WORKS, LTD., Makita USA, Inc. and Makita Corporation of America, Defendants.**

**No. 90 C 4685.**

United States District Court, N.D. Illinois, E.D.

Sept. 3, 1992.

Raymond P. Niro, John C. Janka, Niro, Scavone, Haller & Niro, Chicago, Ill., for plaintiffs.

Phil C. Neal, James K. Gardner, Neal, Gerber & Eisenberg, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

LINDBERG, District Judge.

On August 13, 1990, plaintiffs commenced this action alleging RICO and pendent state law claims against defendants Makita Electric Works, Ltd., Makita USA, Inc., and Makita Corporation of America (hereinafter referred to collectively as "Makita"). On May 8, 1992, the court adopted the report and recommendation of Magistrate Judge Bobrick and dismissed this action with prejudice, determining that plaintiffs could prove no set of facts which would entitle them to relief. An interim protective order was entered while the case was pending concerning the deposition of Joseph Galli, Jr., the Vice–President of Marketing for Black & Decker's power tools group.

After the case was dismissed, Makita disclosed the existence and general subject matter of the Galli deposition in an unrelated proceeding before the U.S. International Trade Commission ("ITC"). In 1992, Black & Decker instituted the ITC proceedings alleging that Makita was "dumping" merchandise in the United States at less than fair value within the meaning of Title VII

of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673 *et seq.* According to Makita, the Galli deposition contradicts Black & Decker's basic argument that the relevant power tools market should include only tools used by professionals and not tools used by consumers. Black & Decker subsequently filed a motion seeking enforcement of the protective order and sanctions. Defendants responded with a motion requesting an order declaring that certain portions of the Galli deposition were not confidential and could be introduced at the ITC proceedings.

The deposition which was the subject of the protective order was obtained during discovery when Makita served a deposition subpoena on Black & Decker, a non-party similarly engaged in the manufacture and sale of power tools. To obtain the deposition, Makita entered into a stipulation with Black & Decker which provided in relevant part:

> This Protective Order shall apply to all information conveyed by Black & Decker, Inc. (hereinafter termed "conveying party") to another party (hereinafter termed "receiving party") in this action pursuant to the Deposition Subpoena and Notice of Deposition served upon it, including, without limitation, all portions of transcripts of deposition testimony; any exhibits thereto; and any excerpt, index, description, copy, summary or abstract thereof (hereafter "DISCOVERY MATE-RIALS"). "CONFIDENTIAL MATERI-ALS" are any DISCOVERY MATERI-ALS that contain trade secrets or other confidential research, development, financial, corporate, or to the terms set forth below, all information produced by the conveying party shall by used by the receiving party solely for the purposes of preparing for and conducting this action and shall not be used for any other purpose.

Stipulation at ¶ 1. An agreed interim protective order was entered by Magistrate Judge Bobrick on May 30, 1991 which covered: "[a]ll documents ... and deposition transcripts labelled 'Confidential' produced or taken by plaintiffs and defendants from each other or from third parties...." Or-

der at ¶ 1. Paragraph 4 of the interim protective order also provided:

> Recipients of Confidential Material shall not reveal, reproduce, disclose, or describe the Confidential Material, or the contents of Confidential Material, in whole or in part, to any person other than a person authorized to receive such documents under the terms of paragraph 2 above. Recipients of Confidential Material shall use such material only for purposes of this action and for no other purpose.

On June 5, 1991, after the execution of the stipulation and entry of the interim protective order, Makita took Galli's deposition. At the beginning of the deposition, Black & Decker's attorney designated the "entire contents of Mr. Galli's deposition testimony as confidential pursuant to paragraph 3 of the [stipulation]."

Black & Decker contends that Makita violated both the letter and spirit of the stipulation and interim protective order by disclosing both the existence and content of the Galli deposition in the ITC proceedings. At the June 19, 1992 Preliminary Injury Conference, William Zeitler, an attorney for Makita, stated:

> There is an antitrust case currently pending, where a number of depositions have been taken of Black & Decker officials and other officials in the domestic industry. All of these depositions directly pertain to the issue currently before this panel on what constitutes the appropriate like-product.

> We would like to ask at this point if the good samaritans at Black & Decker would object to our releasing all of this deposition testimony from their individuals to this panel for its use. These depositions are currently under a protective order. Obviously, Black & Decker can release that information to this panel.

6/19/91 Transcript at 87–88. At the same hearing, Douglas Colton, also an attorney for Makita, stated:

> Specifically, we are referring to a deposition which was conducted on June 5, 1991, of Mr. Joseph Galli, Jr., who identi-

fied himself as vice president of marketing for Black & Decker's power tools in the United States. I personally conducted the deposition. This is a transcript of it.

At the time the deposition was taken, long before this action was contemplated, a number of questions were asked with regard to markets, who sells what to whom, who buys what, and so on. We had agreed with Black & Decker at the time of the deposition to enter a protective order which said that the document of the deposition would only be used in the context of the litigation in which it was taken.

And of course we deemed that to be an agreement we made, and is binding. But is waivable by Black & Decker.

6/19/91 Transcript at 88–89. After the hearing, Black & Decker informed Makita that its conduct had violated the stipulation and interim protective order. Black & Decker then informed Makita that if it continued to violate the protective order, Black & Decker would file a motion for sanctions with this court. Makita subsequently disregarded this warning and made the following reference to Mr. Galli's deposition in its Post–Conference Brief:

Specifically, on June 5, 1991, Douglas Colton on behalf of Makita deposed (technically, in the Chicago case) on oral examination, under oath, Mr. Joseph Galli, Jr., Vice President for Marketing for U.S. power tools for Black & Decker. By agreement with counsel for Black & Decker, this deposition was made subject to a protective order that prohibits its release by Makita without consent from Black & Decker or a court order. The deposition directly addresses many of the issues in this matter, particularly the "like product" issue.

Makita believes that the contents of this deposition are highly pertinent to the claims now being made by Black & Decker. Makita strongly urges that the ITC request Petitioner to provide the ITC with a copy of this transcript.

Makita's Post–Conference Brief, Exhibit 40.

Rule 26(c) of the Federal Rules of Civil Procedure provides:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; ...

FRCP 26(c). The Advisory Committee Notes following Rule 26(c) state that this "subdivision recognizes the power of the court in the district where a deposition is being taken to make protective orders." The Seventh Circuit has held that it is a matter for the district court to issue protective orders. *American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir.1978). See *Baim & Blank, Inc. v. Bruno–New York, Inc.*, 17 F.R.D. 346 (S.D.N.Y.1955) (the power of the court to issue protective orders to prevent disclosure of information extends to inspection and discovery provisions of Rule 26 as well as to the taking of depositions under Rule 30).

■ Although the stipulation at issue is drafted as a protective order, the copy attached as an exhibit to Black & Decker's motion is not signed by the court. Black & Decker has not attached a minute order which shows the date the stipulation was entered as a protective order. The court also cannot find such an entry. The court, and not the parties, has the power to issue protective orders. Because the stipulation was not signed by the court and entered as a Rule 26(c) protective order, the court has no authority to enforce the stipulation. The stipulation amounts to a contract between the parties, which Black & Decker may seek to enforce in a breach of contract action.

■ In determining whether Black & Decker is entitled to relief, the court must therefore focus its analysis solely on the language and terms of the interim protective order. The interim protective order defines confidential material as "[a]ll documents, things, pleadings, and deposition transcripts labeled 'Confidential' produced or taken by plaintiffs and defendants from each other or from third parties in this litigation...." Order at ¶ 1. The interim protective order further provides that the designation of confidential material is "subject to challenge by any opposing party(s) within 20 days of entry of this IPO or 10 days of production, whichever is later." Order at ¶ 1. Black & Decker's attorneys designated the entire contents of Galli's deposition testimony as confidential at the time of his deposition. No challenge to this designation of confidentiality was made by Makita within the time period set forth in this order.

Makita contends it did not violate the protective order because it merely advised the ITC of the existence of the Galli deposition and did not disclose any of Galli's deposition testimony. The interim protective order provides that: "[r]ecipients of Confidential Material shall not reveal, reproduce, disclose or describe the Confidential Material, or the contents of Confidential Material, in whole or in part...." Order at 4. The order is clear that recipients of confidential material shall not disclose either the existence of the confidential material or its contents. To interpret this provision to allow Makita to disclose the existence but not the contents of the Galli deposition would render the language "shall not disclose ... the Confidential Material, or the contents of Confidential Material" redundant.

In addition to disclosing the existence of the Galli deposition, Makita "revealed" and "described" Galli's testimony "in part" by stating that "a number of questions were asked with regard to markets, who sells what to whom, who buys what, and so on." Makita continued to describe the content of the deposition by informing the ITC that "[t]he deposition directly addresses many of the issues in this matter, particularly the 'like product' issue."

The seriousness with which the court viewed the confidentiality provisions of the interim protective order is further illustrated by paragraph 5 of the order, which provides:

That if Confidential Material is required to be filed with the court, it shall be filed in a sealed envelope or container. Quotations from, or paraphrasing of, or other reference, which would tend to identify the content of Confidential Material shall not be permitted in papers filed with the court unless such papers are filed under seal.

Order at ¶ 5. This provision prohibits any quoting from confidential material, any paraphrasing of confidential material or any reference which would tend to identify the content of the confidential material unless such documents are filed under seal with the court. Makita's comments concerning the subject matter of the Galli deposition are references tending to identify the content of the confidential material. While Makita could argue that this provision is applicable only to situations where confidential materials are filed with this court and not other tribunals, the court finds this distinction meritless. The purpose of the protective order is to prevent public disclosure of confidential documents. The order limits disclosure whether before this court or another tribunal.

■ Makita contends its statements concerning the Galli deposition did not violate the confidentiality provisions of the protective order as Black & Decker addressed these same issues before the ITC. In its Post–Conference Brief at 4, Black & Decker stated:

To this end, there are two separate and distinct like product categories in this investigation—professional electric cutting tools and professional electric sanding/grinding tools—based primarily on the distinct differences in physical characteristics and uses, the limited interchangeability, and the difference in production processes and customer or producer perceptions.

Because Black & Decker raised the "like product" issue in the ITC proceedings, Makita argues it could not have disclosed any confidential information by referencing the discussion of this issue in the Galli deposition. Makita, however, seeks to diminish the significance of its comments. Makita advised the ITC that the Galli deposition was highly probative of the "like product" issue and was subject to a protective order which Black & Decker refused to waive. Informing the ITC of the subject matter of the deposition while noting that the deposition was being withheld pursuant to a protective order, in effect, disclosed the substance of the testimony.

To the extent that Makita is arguing that Black & Decker waived the confidentiality provisions of the protective order, the requirements for waiver have not been met. Waiver requires a clear, unequivocal relinquishment of rights. Black & Decker has not waived the confidentiality provisions of the interim protective order merely by addressing issues in the ITC proceedings similar to those in the Galli deposition. No waiver occurred because Black & Decker initiated proceedings to which the Galli deposition was relevant. There has been no clear, unequivocal waiver by Black & Decker of its right to keep the Galli deposition confidential pursuant to the terms of the protective order.

The court acknowledges that Makita is in a difficult position with respect to advancing its arguments before the ITC while yet following the dictates of the protective order. According to Makita, the Galli deposition is highly probative of the issues before the ITC and directly contradicts the position now being advanced by Black & Decker:

> Mr. Galli's testimony on this ["like product"] issue is naturally to be given great weight because it was given in response to a Rule 30(b)(6) deposition notice asking Black & Decker to produce persons knowledgeable about, *inter alia*, "foreign and domestic competition in the United States power tool industry [and] geographical and product markets for power tools in the United States." (citation omitted) Black & Decker produced

> Mr. Galli, the Vice President of Marketing for the [Black & Decker's] power tool group, to testify on these issues. His testimony flatly contradicts a fundamental position taken by Black & Decker in the pending ITC proceeding.

(Makita's brief in opposition to Black & Decker's motion at 13). Makita asserts that the court, by enforcing the interim protective order, will become Black & Decker's unwitting tool to prevent disclosure of this probative evidence. According to Makita, a party subject to an ITC investigation has no right to take discovery in order to refute the testimony offered by the petitioner; therefore Makita has no other means to produce this testimony.

While the court is sympathetic to Makita's dilemma, the interim protective order unambiguously restricts the use of the Galli deposition to this case. "Recipients of Confidential Material shall use such material only for purposes of this action and for no other purpose." Order at ¶ 4. The interim protective order also prevents the disclosure of the deposition to anyone other than the specific persons designated in the order. "Confidential Material may be disclosed only to: (a) counsel of record ...; (b) consultants or expert witnesses ... retained by ... the parties in the prosecution or defense of this action; (c) the court and court personnel, and (d) court reporters and stenographers...." Order at ¶ 3. The order further provides that the termination of this action shall not relieve any person from maintaining the confidentiality of all materials subject to the protective order. Order at ¶ 7.

The court has the power to sanction parties for their conduct before another tribunal when such conduct involves the violation of this court's order. See *Chambers v. NASCO, Inc.*, —— U.S. ——, ——, 111 S.Ct. 2123, 2139, 115 L.Ed.2d 27 (1991). The courts have discussed the importance of imposing sanctions for violations of protective orders:

> The Court considers this [violation of a protective order] an extremely serious matter. Not only does it jeopardize the confidentiality of sensitive commercial

and financial information.... It calls into question the integrity of the discovery process conducted under protective orders. In thousands of actions throughout the federal court system, millions of documents have been and are being produced in reliance on the binding force of protective orders. Those orders have become a standard feature of most commercial litigation, obviating the need for costly and time-consuming proceedings on discovery objections. As a result, a tendency may have developed to take them for granted and to treat compliance with them cavalierly. An appropriate sanction must therefore be imposed, 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.' *National Hockey League v. Met. Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). Rule 37(b)(2) authorizes imposition of sanctions, including contempt, for failure to obey orders relating to discovery, including protective orders issued under Rule 26(c).

*Falstaff Brewing Corp., v. Philip Morris Inc.*, 89 F.R.D. 133, 135 (N.D.Cal.1981), aff'd in part and rev'd in part, 702 F.2d 770 (9th Cir.1983).

■ In a recent opinion regarding protective order violations, the Seventh Circuit discussed the legal standard to be applied in determining whether sanctions should be awarded. The Seventh Circuit determined that sanctions are appropriate when the noncomplying party acted either with wilfulness, bad faith or fault. *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir.1992), citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976) (per curiam); *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1956). The Seventh Circuit noted that these three measures of culpability are each wholly distinct from each another:

"Bad faith," for instance, is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order. "Fault," by contrast, doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conductor lack thereof which eventually culminated in the violation.

*Marrocco*, 966 F.2d at 224.

In this case, Makita's conduct in violating the interim protective order was willful and in bad faith. Makita was fully aware that the Galli deposition was subject to a protective order and disregarded the order's unequivocal mandate that the deposition be used for this action only. Makita violated the express provisions of the interim protective order that the existence of confidential material, the Galli deposition, not be disclosed. Makita further described and outlined the general content of the deposition, seeking to establish its relevance to the issues before the ITC. By informing the ITC of the subject matter of the Galli deposition while noting that it was subject to a protective order which Black & Decker would not waive, Makita effectively disclosed the substance of the deposition. Even after Black & Decker informed Makita that its conduct was violating the protective order, Makita continued to discuss the deposition and referenced it in its brief to the ITC. Whatever the court thinks of Black & Decker's reasons for not producing the Galli deposition, Makita was on notice that its actions might violate the protective order. If Makita violated the protective order (which the court has determined it did), the violation was willful and in bad faith.

The Supreme Court has held that the district court has the "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, —— U.S. ——, ——–——, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991). In order to deter this kind of blatant disregard for protective orders, the court relies on its inherent power to sanction Makita for its bad faith conduct. *Chambers*, —— U.S. at ——, 111 S.Ct. at 2134. Sanctions are therefore awarded to Black & Decker and against counsel for

Makita in the amount of $5,000. Counsel for Makita shall not have recourse to Makita for payment of sanctions. It is the objective of the court to visit a significant sanction upon counsel, and counsel only, in an amount that should cause the bar to be aware of the admonition of the Supreme Court in *Chambers,* —— U.S. at ——, 111 S.Ct. at 2139. Makita is further ordered to refrain from using the Galli deposition or information derived from the deposition without court authorization. If Makita disregards this order, the court will entertain Black & Decker's request to prohibit counsel from representing Makita in the ITC proceedings. Makita is also directed to attempt redaction of all references to the Galli deposition in the record of the ITC proceedings.

Makita's motion for an order declaring certain portions of the Galli deposition nonconfidential is denied. The court finds no basis for determining that the Galli deposition is not confidential. Galli's deposition was conditioned upon a stipulation and agreed interim protective order which protected the confidential nature of Galli's testimony. Pursuant to the terms of the interim protective order, Black & Decker designated the entire contents of the deposition confidential, to which Makita failed to timely object. Makita has set forth no evidence to show that this designation was not made in good faith or that confidentiality was subsequently waived by Black & Decker.

▪ Where a protective order is agreed to by the parties, a higher burden is placed on the movant to justify modification of the order. Makita has not met this burden. See *American Telephone & Telegraph Co. v. Grady,* 594 F.2d 594, 597 (7th Cir.1978); *Omega Homes, Inc. v. Citicorp Acceptance Co.,* 656 F.Supp. 393, 404 (W.D.Va. 1987) (the terms of the protective order should be enforced when a protective order was stipulated to by the parties and it is clear that discovery was for the purpose of one case and not for other cases); *GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129, 132 (S.D.N.Y.1976) (the shared and explicit assumption that discovery of this case was for this case alone goes a long way toward denial of a party's request to use documents produced during discovery in another proceeding).

While Makita asserts this court will become the unwitting tool of Black & Decker by enforcing the protective order, the court reminds Makita that Makita itself negotiated the stipulation and agreed interim protective order. Pursuant to the terms of the protective order, the Galli deposition was designated as confidential and its use was limited to this action only. It is Makita's actions, whether unwitting or not, which prevent disclosure of this allegedly probative evidence.

ORDERED: Black & Decker's motion seeking enforcement of the interim protective order and sanctions is granted. Sanctions are awarded to Black & Decker and against counsel for Makita, without recourse to Makita, in the amount of $5,000. Makita is ordered to refrain from using the Galli deposition or information derived from the deposition without court authorization. The court will entertain Black & Decker's request to prohibit counsel from representing Makita in the ITC proceedings if there is a repetition of disregard for court orders. Makita is also directed to attempt redaction of all references to the Galli deposition in the record of the ITC proceedings. Makita's motion for an order declaring certain portions of the Galli deposition nonconfidential is denied.