In re HANDY ANDY HOME IMPROVE-
MENT CENTERS, INC., Debtor.

**Bankruptcy No. 95 B 21655.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 2, 1996.

Lawrence K. Snider, Michael P. Richman, John J. Voorhees, Jr., Mayer, Brown & Platt, Chicago, IL, for the Official Unsecured Bank Creditors' Committee of Handy Andy Home Improvement Centers, Inc.

Brad Berish, Adelman, Gettleman & Merens, Chicago, IL, Deborah M. Buell, Cleary, Gottlieb, Steen & Hamilton, New York City, for GIB Group, S.A., Amfidis, Inc., A–OK of Delaware, Inc., Handy Andy Holding Co., Inc., and Handy Andy Realty Co.

John Collen, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Debtor.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This case presents the question of whether, in the light of the Seventh Circuit holding in *Jepson, Inc. v. Makita Electric Works, Ltd.*, 30 F.3d 854 (7th Cir.1994), a bankruptcy judge should enter a stipulated protective order without a showing of good cause. This matter is before the Court on the Motion of the Official Unsecured Bank Committee ("Bank Committee") for an order authorizing the Bank Committee to seek production of certain documents from and conduct depositions of GIB Group, S.A., Amfidis, Inc., A–OK of Delaware, Inc., Handy Andy Holding Company, Inc., and Handy Andy Realty Company (each a "Discovery Entity" and collectively the "Discovery Entities")[1] with respect to certain pre-petition conduct and transactions that may give rise to causes of action by or on behalf of the Debtor's estate pursuant to subpoena.

On October 12, 1995, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § *101 et seq.*, was filed against Handy Andy. On November 1, 1995, Handy Andy consented to the entry of an order for relief and became the debtor in possession. The United States Trustee appointed the Bank Committee and the Official Committee of Unsecured Trade Creditors ("Trade Committee") (collectively the "Committees") on November 8, 1995. Handy Andy continues to operate its business and conduct its financial affairs as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

On June 5, 1996, the Bank Committee appeared before this Court requesting the entry of an order authorizing and directing the production of documents and the oral examination of the Discovery Entities. Subsequently, the Committees, the Debtor and the Discovery Entities entered into a stipulation governing the terms for the production of certain documents and information ("Stipulation"). The Stipulation described what categories would be produced and provided that the Discovery entities would not be required to furnish any Discovery Materials until counsel for the Bank Committee and the Discovery Entities have signed, and this Court has entered, an order pursuant to the Confidentiality Stipulation.

---

1. The term "Discovery Entities" will be used to maintain consistency through out this memorandum and order. The parties, in their stipulations and memorandum, also call these entities "Producing Parties" and "2004 Examination Entities."

## I. JURISDICTION

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 by reference from the United States District Court for the Northern District of Illinois under General Rule 2.33(A). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## II. DISCUSSION

### A. Federal Rule of Bankruptcy Procedure 2004

■■■■ Creditor's committees appointed under § 1102 may "investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business . . . and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2). This includes investigating any potential causes of action which might be asserted by the Committees or the Debtor for the benefit of unsecured creditors. The scope of this investigation is primarily governed by Fed.R.Bankr.P. 2004 which provides that the court may order the examination of any entity on motion of any party in interest. Fed.R.Bank.P. 2004(a).[2]

> The scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted. Where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed.

*In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D.Wisc.1984).

In this case, the Debtor cooperated with the Bank Committee and voluntarily furnished the information it had obtained to the Bank Committee. The Bank Committee brought its motion so as to complete the investigation. Initially the Bank Committee and the Discovery Entities were unable to agree as to the procedure for this investigation, the method of production, what should be produced, and protection of the confidentiality of certain information. After negotiations, the parties submitted a stipulation and order governing the production of documents and information ("Confidentiality Stipulation").

The Confidentiality Stipulation originally classified information into two categories. The first category was general "Discovery Materials." Discovery Materials included all information furnished or disclosed in response to the Bank Committee's request for information. Such materials were to be considered confidential and were to be used solely in connection with Handy Andy's bankruptcy case and not disclosed outside the bankruptcy. The only permitted public use of general Discovery Materials was to be in court pleadings, hearings, trials, depositions or interviews related to the proceedings. No designation of Discovery Materials as confidential was required.

The second category was labeled "Highly Confidential Discovery Materials." This was defined as any Discovery Material that the Discovery Entities in good faith believed, if made public or otherwise disclosed, would "materially affect their business, financial or commercial interests or which affects or reflects personnel decisions of those entities and that the [Discovery Entities] in good faith believe would jeopardize their properly protectable interests, absent such designation." Highly Confidential Discovery Material were required to be designated as such and could only be disclosed to certain "Qualified Persons." Submissions and references to Highly Confidential Discovery Materials were to be made under seal.

---

**2.** "The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." Fed.R.Bankr.P. 2004(b).

Subsequently, after consideration of *Jepson v. Makita,* the parties revised the Confidentiality Stipulation. The revised Confidentiality Stipulation was signed by the parties and entered by this Court. The stipulation now limits the requirement of confidentiality to Highly Confidential Discovery Materials.

The question to be determined is should this Court enter a protective order restricting public access to the Discovery Materials.

### B. The "Good Cause" Requirement of Fed.R.Civ.P. 26(c)

 In proceedings governed by Fed.R.Civ.P. 26(c), the Seventh Circuit set clear limitations on the use of court orders which adopt the parties' agreement concerning confidentiality of documents. "Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Jepson v. Makita,* 30 F.3d at 858. However, the power to enter such protective order is not absolute. In *Jepson v. Makita,* the Seventh Circuit found that under Fed.R.Civ.P. 26(c),[3] the court's power to enter a protective order is limited to situations where "good cause" has been determined. "Even if the parties agree that a protective order should be entered, they still have the burden of showing that good cause exists for issuance of that order." *Jepson v. Makita,* 30 F.3d at 858 (citations omitted). Moreover, "if good cause is not shown, the discovery materials in question should not receive judicial protection." *Id.* (quoting *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 789 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989) (citations omitted)).

 Generally, good cause requires a showing that disclosure of the information will cause a clearly defined and serious injury. Although good cause is not specifically defined in the statute, the Third Circuit has recognized several factors which may be considered in evaluating whether good cause exists. These factors include: whether disclosure will violate any privacy interests; whether the information is being sought for a legitimate purpose; whether disclosure will embarrass a party; whether the information being sought is important to public health and safety; whether the sharing of information will promote fairness and efficiency; whether a party benefitting from the order of confidentiality is a public entity or official; and whether the case involves issues important to the public. The good cause analysis should also reflect a balancing of private versus public interests. *Glenmede Trust Company v. Thompson,* 56 F.3d 476, 483 (3rd Cir.1995) (citing *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 787–91 (3rd Cir. 1994)). There is not, however, any pending adversary or contested matter under which the discovery is being sought. Therefore Rule 26 is not adopted either through Bankruptcy Rule 7026 or Bankruptcy Rule 9014.

 An investigation under Fed.R.Bankr.P. 2004 may seem analogous to the discovery provisions of the Federal Rules of Civil Procedure Federal Rules, but the provisions are actually quite different. No "good cause" language is included in the Rule. Generally, a Rule 2004 examination is a broad "fishing expedition" into a party's affairs for the purpose of obtaining information relevant to the administration of the bankruptcy estate. *In re Szadkowski,* 198 B.R. 140, 141 (Bankr.D.Md.1996). Rule 2004 is substantially a "pre-litigation device for assessing whether grounds exist to commence an action …" *In re French,* 145 B.R. 991, 992 (Bankr.D.S.D.1992). Thus, while civil discovery and bankruptcy investigation provisions seem parallel, they are not identical, and case law requiring a showing of "good cause" for the entry of a protective order under Fed.R.Civ.P. 26(c) is inapplicable to a Rule 2004 investigation. *Jepson v. Makita* does not control.

### C. 11 U.S.C. § 107 Public Access to Papers

 Bankruptcy judges can also find authorization for the entry of protective or-

---

3. "Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …" Fed.R.Civ.P. 26(c)

ders under Bankruptcy Code section 107.[4] Section 107 provides that papers filed in a case under Title 11 or in the Bankruptcy Court dockets are public examination and are open to examination. 11 U.S.C. § 107(a). However, 107(b) provides an exception to this blanket rule. Section 107(b) provides that, upon request, the court shall "(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b). Here, in section 107, the distinction between the Bankruptcy Code and the Fed.R.Civ.P. 26(c) is clear. If the information for which protection is sought fits into any of the categories specified in § 107(b), "the court is required to protect a requesting interested party, and has no discretion to deny the application [for a protective order]" *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2nd Cir.1994) (citing 2 Collier on Bankruptcy ¶ 107.01, at 107–2 (15th ed. 1993)). Good cause is not an element of section 107. "When Congress addressed the secrecy problem in § 107(b) of the Bankruptcy Code it imposed no requirement to show 'good cause' as a condition to sealing confidential commercial information." *Id.* at 28. The only requirement is that the information the parties seek to have sealed be "confidential and commercial in nature." *Id.* at 27.

Section 107, however, is inapplicable to this situation. Section 107 only applies to filed documents. In this district, absent a court order, discovery materials may not be filed.[5] Thus, at this stage of the discovery, the mandatory requirements of section 107 do not apply.

### D. Bankruptcy Rule 9018

Rule 9018 provides:

On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.

Bankruptcy Rule 9018.

The applicable subsection is 9018(1), which, as stated, protects an entity "with respect to a trade secret or confidential research, development, or commercial information." Commercial information has been defined as "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Orion Pictures*, 21 F.3d at 27 (citing *Ad Hoc Protective Comm. for 10½% Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (9th Cir. BAP 1982)).

As previously stated, the parties' stipulation defined Highly Confidential Discovery Materials as any Discovery Material that the Discovery Entities in good faith believe, if made public or otherwise disclosed, would "materially affect their business, financial or commercial interests or which affects or reflects personnel decisions of those entities and that the [Discovery Entities] in good faith believe would jeopardize their properly protectable interests, absent such designa-

---

**4.** The entire section reads:

(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. 107.

**5.** (1) Except as provided by this Rule, discovery materials shall not be filed with the court. The party serving the discovery materials or taking the deposition shall retain the original and be the custodian of it. The court, on its own motion, on motion of any party, or on application by a nonparty, may require the filing of any discovery materials or may make provisions for a person to obtain a copy at his/her own expense. U.S. Dist. Ct. Rules N.D.Ill., General Rule 18(B)(1); *see also* Local Bankr.R. 406(B)(1).

tion." Such information falls under the accepted definition of "commercial information."

Section 9018(1) is limited to documents containing commercial information. A document does not contain commercial information merely because it is used in a commercial industry. Commercial information is information which would give a competitor an unfair advantage. The parties argue that the information which they seek to have protected falls within the recognized definition of commercial information. As support, the parties offer the Declaration of Eric Ter Hark ("Declaration"), general counsel to GIB and director to remaining discovery entities. In the Declaration, Ter Hark asserts that certain documents, minutes of board and executive meetings, reports related to certain of the Producing Entities financial performance, and documents related to property acquisition of other of the Producing Entities are highly confidential and should not be disclosed. The parties also agreed to prepare and maintain a log or any produced material designated as Highly Confidential Discovery Materials. The stipulation and order further provided that, in the event of any challenge to the confidentiality of a document, the party seeking to have the document protected will have the burden of proof.

### III. CONCLUSION

As previously stated, Rule 9018 does not require a showing of "good cause" nor does it contain a filing requirement. Its sole requirement is that the information for which protection is sought falls into on of the required categories. Thus, pursuant to Rule 9018, this Court has approved and entered the parties' Stipulated Protective Order.