**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 7, 2018
Decided January 18, 2019

*Before*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-1811

| | |
|---|---|
| DONALDSON TWYMAN,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>S&M AUTO BROKERS, INC.,<br>    *Defendant.*<br><br>APPEAL OF: JOEL ALAN BRODSKY | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 1:16-cv-4182<br><br>Virginia M. Kendall,<br>*Judge.* |

**O R D E R**

Joel Brodsky, counsel for the defendant in a used-car dispute, was sanctioned by the district court for a variety of statements he made and motions he filed attacking the plaintiff's counsel and expert witness. The district court imposed a $50,000 fine, which Brodsky argues was not warranted by his actions.[1] We affirm the district court's

---

[1] Brodsky also argues that the $50,000 sanction was punitive and so could not have been imposed without more procedural protections than he received, citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994), and *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017). Because Brodsky fails to

judgment because the fine was justified in light of Brodsky's extreme and repeated misbehavior.[2]

The suit underlying this appeal involved allegations that the defendant, a used-car dealership, sold the plaintiff a car whose odometer and crash records had been tampered with. Over the course of the litigation, the defendant's attorney, Joel Brodsky, made multiple accusations that the plaintiff's attorney, Peter Lubin, engaged in unprofessional, unethical, and even criminal behavior. For example, in one filing Brodsky argued that Lubin "proved by his actions that he has no interest in the truth, and just sees the litigation process as an extortion game, in which his only goal is to extort as much money as possible out of the Defendants, no matter what the truth is." In another he said that "[t]he Plaintiff[']s Motion for Partial Summary Judgment is, like the entire Plaintiff[']s case, a total and complete fraud, submitted for the sole purpose [of] assisting the Plaintiff[']s[] attorneys in their attempt to use the legal system to extort money from the Defendant." During Lubin's deposition of a defense witness Brodsky put an even finer point on it, claiming that Lubin was part of a "criminal enterprise" that "totally concocted, fabricated [this entire case] in an attempt to make money where there is no case at all." And Brodsky sent a number of inflammatory emails to Lubin and his team echoing these accusations.

Brodsky also went after the plaintiff's expert witness, Donald Szczesniak. Brodsky accused Szczesniak of fabricating expert reports in this and other cases, and he submitted an affidavit from one of Szczesniak's former clients, Diane Weinberger, to support his accusations. Two weeks later, Brodsky filed a motion asking the district court to hold Szczesniak in criminal contempt and to refer him for prosecution to the United States Attorney. In that motion Brodsky accused Szczesniak of damaging a fence at Weinberger's home in order to intimidate her into not testifying against him and of sending Brodsky an anonymous fax to discourage Brodsky's own investigation into Szczesniak's background. The district court summarily denied the motion, explaining that "[t]he judicial branch does not direct the executive branch to bring criminal prosecutions." Undeterred, Brodsky filed a motion for sanctions against both the plaintiff and Szczesniak. The plaintiff denied the allegations regarding the damaged fence and the anonymous fax and submitted affidavits from Szczesniak, his wife, his mother, and his son that showed Szczesniak had been elsewhere at the time of the incidents. Brodsky responded by alleging that Szczesniak had lied in his affidavit and questioning whether Szczesniak's son even existed. Szczesniak sought and received permission from the court

---

identify any way in which additional procedures might have made a difference in his case, we decline to address this argument.

[2] We appointed Thomas L. Shriner, Jr. as amicus curiae to defend the district court's decision. Mr. Shriner has ably discharged that responsibility, for which we thank him.

to respond directly to Brodsky's accusations, and Brodsky continued to accuse him of falsifying reports and engaging in a "routine practice of intimidation and retaliation."

Brodsky's misconduct ultimately eclipsed the lawsuit. The parties settled their dispute, but the court retained jurisdiction to determine whether Brodsky should be sanctioned. During the court's three-hour evidentiary hearing, Szczesniak and Lubin both testified and were subject to cross-examination regarding Brodsky's accusations against them. Brodsky, however, declined to testify or offer any new evidence in his defense (apart from a copy of Weinberger's report to the police about the damage to her fence). In lieu of testifying, Brodsky asked for and received permission to make a statement apologizing for his conduct.

The district court decided to sanction Brodsky under its inherent authority. The court noted Brodsky's "unprofessional, contemptuous, and antagonistic behavior directed at opposing counsel" throughout the litigation but focused primarily on his allegations and attacks levied against Szczesniak. It described these actions as "wildly inappropriate" and concluded that they were undertaken "in bad faith, in an attempt to improperly impugn Szczesniak's reputation before the Court, to have the Court potentially disqualify him as an expert, or at least [to] intimidate Szczesniak to the extent he would not testify." The court also found Brodsky's attempts at mitigation to be "wholly inadequate for his egregious conduct." Based on these findings, the court directed Brodsky to (1) pay a $50,000 fine to the clerk of the district court, (2) attend an ethics course approved by the Illinois Attorney Registration and Disciplinary Commission, and (3) attend an anger management class. The court also referred Brodsky to the district court's executive committee to consider barring or suspending him from practicing law in that district.

There are various sources of authority that empower a court to sanction parties or attorneys who appear before it. The court in this case relied on its inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). This power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). Its exercise is appropriate against offenders who willfully abuse the judicial process or otherwise conduct litigation in bad faith. *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009). Sanctions may be imposed "not only to reprimand the offender, but also to deter future parties from trampling upon the integrity of the court." *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003). When sanctioning is warranted, a "district court has discretion to select an appropriate sanction, [but] the court must impose a sanction that fits the inappropriate conduct." *Burda v. M. Ecker Co.*, 2 F.3d 769, 776 (7th Cir. 1993) (citation omitted). Our review of that discretion is

deferential. *Ridge Chrysler Jeep, LLC v. DaimlerChrysler Fin. Servs. Ams. LLC*, 516 F.3d 623, 625 (7th Cir. 2008).

The district court did not abuse its discretion here. While it would have been preferable for the court to state expressly the basis for the size of its fine, Brodsky's egregious behavior, obvious on the face of the record and emphasized at length by the court, more than justified the court's choice of sanction. Brodsky's rhetoric was inappropriate and outlandish, and his attempt to implicate the court in his fraud—and to use legal process as a tool to intimidate a witness—was beyond the pale. On this record, we have no trouble affirming the district court's decision.

AFFIRMED.